[Cite as *State v. Williams* , 2011-Ohio-763.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :
                                        :
    Plaintiff-Appellee,                 :  Case No. 10CA3162
                                        :
    vs.                                 :  **Released: February 15, 2011**
                                        :
PERNELL E. WILLIAMS,                    :  DECISION AND JUDGMENT
                                        :  ENTRY
    Defendant-Appellant.                :
_____

APPEARANCES:

Pamela C. Childers, Chillicothe, Ohio, for Defendant-Appellant.

Michael M. Ater, Ross County Prosecutor, and Jeffrey C. Marks, Ross County Assistant Prosecutor, Chillicothe, Ohio, for Plaintiff-Appellee.
_____

McFarland, J.:

{¶1}    Defendant-Appellant, Pernell E. Williams, appeals the decision of the Ross County Court of Common Pleas finding him guilty of aggravated possession of drugs.  Williams argues the trial court erred in denying his motion to suppress.  His argument is unwarranted.  During the incident in question, the officer properly detained and patted-down Williams under the authority of *Terry v. Ohio*.  Further, the doctrine of "plain feel" gave the officer the necessary probable cause to conduct the subsequent

search.  Accordingly, we overrule Williams' assignment of error and affirm the decision of the court below.

## I. Facts

**{¶2}**    In June 2009, State Highway Patrol Trooper Nick Lewis, conducted a traffic stop of a vehicle driven by Williams.  In addition to Williams, two other men were in the car, a Mr. Donahoe and a Mr. Murphy.[1] Lewis called for backup, including a canine unit which arrived shortly thereafter.  While checking Murphy's Michigan ID card, Lewis placed him in his patrol car, but he allowed Williams and Donahoe to remain in their vehicle.  Once the canine unit and other officers arrived at the scene, the canine officer conducted a drug check around the vehicle.  The canine subsequently alerted to the presence of drugs.

**{¶3}**    After the positive drug alert, officers removed Donahoe and Williams from their vehicle.  During his pat-down of Williams, Trooper Lewis felt the presence of a small, round object between Williams' buttocks. Lewis believed it was a package containing drugs, but due to safety concerns he did not remove the object at that time.  Lewis then placed Williams in restraints and put him in his cruiser.

**{¶4}**    Lewis then searched Murphy, and discovered a baggie containing white powder.  After finding the baggie, Lewis handcuffed

---

[1] The record does not contain the first names of the two men.

Murphy and placed him in a cruiser.  Another officer then observed Murphy attempting to conceal something in the backseat.  Officers removed Murphy from the cruiser and searched the area.  Their search revealed that Murphy had been attempting to conceal two OxyContin pills.  When Lewis questioned Murphy about his actions, Murphy admitted the pills were his and further stated that he had received them from Williams.  After Lewis spoke with Murphy, he questioned Donahoe.  Donahoe told Lewis that Williams and Murphy were involved in selling drugs.  He further stated that Williams and Murphy presently had drugs on their persons.  Donahoe was released at the scene and Williams and Murphy were transported to the station.  There, Williams removed the object between his buttocks that Lewis had located.  The object was a package containing illegal drugs - OxyContin pills.

{¶5}     Williams was subsequently indicted under R.C. 2925.11, for aggravated possession of drugs - Oxycodone, in an amount equal to or exceeding five times the bulk amount but less then fifty times the bulk amount.  Williams moved to suppress the evidence on the basis that Lewis arrested him as soon as he was handcuffed and placed in back of the cruiser, and that, at that time, Lewis lacked probable cause.  Lewis, on the other hand, testified that when he handcuffed Williams, he  was under

"investigative detention," not arrest. After a full hearing, the trial court denied the motion to suppress. Pursuant to a plea agreement with the State, Williams entered a plea of no contest and was sentenced to two years in prison. Following that sentence, Williams timely filed the current appeal.

## II. Assignment of Error

THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS IN VIOLATION OF THE FOURTH AMENDMENT OF UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION FOURTEEN OF THE OHIO CONSTITUTION.

## III. Standard of Review

{¶6} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶8. In a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether

they meet the applicable legal standard. *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141.

## IV. Legal Analysis

{¶7}     We first note that the legality of the initial traffic stop is not in dispute and is not an issue in the current matter. Rather, Williams' assignment of error is based on two arguments 1) there were no articulable facts to justify Lewis' pat-down of Williams; 2) even if the pat-down was warranted, Lewis did not have probable cause as a result of that pat-down to arrest Williams. For the following reasons, we disagree.

{¶8}     The Fourth Amendment to the United States Constitution and Article I, Section Fourteen of the Ohio Constitution protect individuals from unreasonable searches and seizures. The Supreme Court of the United States recognizes three types of police-citizen interactions in this context: 1) a consensual encounter; 2) a *Terry* stop; and 3) a full-scale arrest. *State v. Travis*, 4th Dist. No. 06CA3098, 2008-Ohio-1042, at ¶9, citing *Florida v. Royer* (1982), 460 U.S. 491, 501-507, 103 S.Ct. 1319 and *United States v. Mendenhall* (1980), 446 U.S. 544, 553, 100 S.Ct. 1870. Fully addressing the issues in the case sub judice requires an analysis of both the second and third types of interactions, the *Terry* stop, and probable cause for an arrest.

{¶9}     In *Terry v. Ohio*, (1968), 392 U.S. 1, 88 S.Ct. 1868, the Supreme Court ruled that one exception to the Fourth Amendment warrant

requirement allows a police officer to conduct a brief investigative stop if the officer possesses a reasonable suspicion that criminal behavior is imminent. Id. at 21; *see*, also, *United States v. Brignoni-Ponce* (1978), 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607; *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. Under *Terry*, a police officer may stop or detain an individual without probable cause when the officer has a reasonable suspicion of criminal activity, but that suspicion must be based on specific, articulable facts. *State v. Dearth*, 4th Dist. No. 09CA3122, 2010-Ohio-1847, at ¶10, citing *Terry* at 21-22. "Reasonable suspicion cannot be justified by mere intuition, but instead must be based upon specific, articulable facts and such rational inferences as may be drawn from those facts." *State v. Boggs*, 4th Dist. No. 04CA2803, 04CA2804, 2005-Ohio-2758, at ¶15, citing *Terry* at 21-22.

{¶10}   Additionally, to pat-down an individual during a *Terry* stop, the officer must have reason to believe the individual is armed. " * * * [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue

is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry* at 27. The purpose of a *Terry* search "is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence * * * ." *State v. Evans* (1993), 67 Ohio St.3d 405, 414, 618 N.E.2d 162, quoting *Adams v. Williams* (1972), 407 U.S. 143, 146, 92 S.Ct. 1921.

{¶11} In the instant matter, and despite Williams' arguments to the contrary, we find that Trooper Lewis' pat-down constituted a valid application of the *Terry* doctrine. As already noted, a canine unit was called to the scene and alerted to the presence of drugs in the vehicle. Ohio courts have determined that such canine checks of the exterior of a vehicle do not constitute a search within the meaning of the U.S. and Ohio Constitutions. See, e.g., *State v. Williams*, 12 Dist. No. CA2009-08-014, 2010-Ohio-1523, at ¶22. Accordingly, before conducting a canine check, there need not be a reasonable, articulable suspicion of criminal activity. Further, it is well established that once a canine has positively alerted to the scent of drugs in the vehicle, police have probable cause to search it. See, e.g., *State v. Dewitt*, 2nd Dist. No. 23735, 2010-Ohio 6476, at ¶45; *State v. Johnson*, 12th Dist. No. CA2009-12-307, 2010-Ohio-5808, at ¶58.

{¶12}   Here, when the canine alerted to the presence of drugs, Williams, along with Donahoe, was still sitting in the vehicle.  Thus, Trooper Lewis had a reasonable suspicion, based on articulable facts, of the existence of criminal activity.  As such, he was fully justified, under *Terry*, in detaining Williams and removing him from the vehicle.

{¶13}   We also find that Lewis' subsequent pat-down of Williams was fully justified under *Terry*.  Ohio courts have recognized that people involved in illegal drug activity are often armed and officers have a right to pat-down those people for their protection.  "The right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." *Evans* at 413.  Accordingly, we find that both Williams' detention and pat-down were properly conducted under the authority of *Terry v. Ohio*.  We now turn to the second part of our analysis, whether or not Lewis had probable cause for Williams' arrest.

{¶14}   As previously stated, when Lewis patted-down Williams, he discovered a suspicious object in the rear of his pants.  "Although *Terry* limits the scope of the search to weapons, the discovery of other contraband during a *Terry* search will not necessarily preclude its admissibility." *State v. Hansard*, 4th Dist. No. 07CA3177, 2008-Ohio-3349, at ¶30.  The United

States Supreme Court adopted this "plain feel" doctrine in *Minnesota v. Dickerson* (1993), 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334. There, the court stated, "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." Id. at 375-376. "If the illegal nature of the suspicious object is not immediately apparent, police are not permitted to continue touching, feeling or manipulating the object to identify its nature." Id.

{¶15} We have approved the application of the "plain feel" doctrine in circumstances very similar to the case sub judice. In *State v. Hansard*, supra, a police officer made a vehicle stop, removed the defendant, and patted him down for safety reasons. During the pat down, the officer located a tennis ball-sized object on the inside of the defendant's thigh. The officer removed the object which proved to be packets of crack cocaine. The defendant moved to suppress the evidence, arguing that the officer lacked probable cause to remove the object and arrest him. In overruling the defendant's argument, we determined that the nature of the object as

contraband was immediately apparent. "In the context of the plain feel exception to the warrant requirement, 'immediately apparent' is a term of art - it simply means the officer has probable cause to associate the object with criminal activity." Id. at ¶31.

{¶16} We further stated in *Hansard* that determining probable cause involves a legal conclusion and, thus, requires de novo review. Id. at ¶35. Additionally, we stated there is probable cause for a search when an officer has a reasonable suspicion "that is sufficiently strong to warrant a prudent person in believing that the place to be searched contains evidence of a crime." Id., citing *State v. Williams*, 11th Dist. No. 2003-T-0071, 2004-Ohio-6337, at ¶16. Finally, in determining probable cause, courts must "look to the totality of the facts and circumstances, including a police officer's specialized knowledge." *Hansard* at ¶35, citing *State v. Jones*, 4th Dist. No. 03CA61, 2004-Ohio-7280, at ¶40.

{¶17} In the case sub judice, though the trial court found that Lewis unquestionably had the right to pat-down Williams, it did not think that locating the object during the pat-down established probable cause. The court stated, "Based solely upon the feel of the hard object, this Court

doesn't think that there was probable cause to make the arrest." [2] We

disagree with that finding.

{¶18}   It was immediately apparent to Lewis that the object was

contraband from more than just the "feel of the hard object."  The first and

most obvious indicator was that the canine had alerted to the presence of

drugs in the vehicle while Williams was still inside.  As such, Lewis had a

reasonable suspicion that illegal drugs were in the vicinity.  Next was the

physical characteristics and the location of the object itself.  At the

suppression hearing, Lewis stated that it was a hard, golf ball-like object

located between Williams' buttocks.  When asked about his opinion as to

what the object was, Lewis testified that "I believed it was some form of

narcotic, an illegal drug. * * * Based on my experience.  I've had several

stops that have went that way where I found something in the rear of

someone's pants, and it's always been an illegal drug."  Thus, Lewis'

specialized knowledge also enabled him to form a reasonable suspicion  as

to the nature of the object.

{¶19}   Lewis did not remove the object at the time of its discovery

due to safety concerns.  "I prefer that the defendant, or the subject at the time

---

[2] Though the trial court did not believe that probable cause was established at that point under the "plain feel" doctrine, it still denied Williams' motion to suppress.  The court found that additional, subsequent evidence, including statements from Murphy and Donahoe, and the discovery of the two OxyContin pills, combined with the object found during William's pat-down, did constitute probable cause.

would remove it themselves, basically for my safety." However, based on the totality of the facts and circumstances, we find that Lewis had probable cause to do so.

{¶20} The crux of Williams' argument is that, despite Lewis' testimony to the contrary, Williams was placed under arrest the moment he was handcuffed and placed in back of the cruiser. Williams argues that because Lewis lacked probable cause at that point, the drug evidence must be suppressed. However, we do not find it necessary to determine the exact moment of Williams' arrest. Even assuming that Williams is correct and he was functionally under arrest immediately following the pat-down, our "plain feel" analysis related above demonstrates that Lewis did, in fact, have the necessary probable cause.

V. Conclusion

{¶21} After reviewing the record below, we find that Trooper Lewis was justified in detaining and patting down Williams under the authority of *Terry v. Ohio*. Further, under these particular facts and circumstances, it was immediately apparent that the object Lewis discovered during the pat-down was contraband. As such, there was probable cause for the search, and the trial court's decision to overrule Williams' motion to suppress was correct. Accordingly, we overrule Williams' sole assignment of error.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, P.J. and Abele, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Matthew W. McFarland, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**