[Cite as *State v. Nolen*, 2020-Ohio-118.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,               :         Case No. 19CA3873

      Plaintiff-Appellee,        :

v.                              :        <u>DECISION AND</u>
                                         <u>JUDGMENT ENTRY</u>

STEVEN A. NOLEN,[1]        :

      Defendant-Appellant.     :        **RELEASED 01/08/2020**

_____
<u>APPEARANCES</u>:

Samuel H. Shamansky, Donald L. Regensburger, and Colin E. Peters, Samuel H. Shamansky Co., L.P.A., Columbus, Ohio, for appellant.

Shane A. Tieman, Scioto County Prosecutor, and Jay Willis, Scioto County Assistant Prosecutor, for appellee.
_____
Hess, J.

{¶1} Steven Nolan appeals from his convictions, following a no contest plea, for possession of heroin, assault, and escape. The charges stemmed from a traffic stop during which an Ohio State Highway Patrol trooper conducted a pat-down search that resulted in the discovery of approximately 80 grams of heroin. Nolan contends the trial court erred in multiple ways when it denied his motion to suppress. For the reasons that follow, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶2} The Scioto County grand jury indicted Nolan on one count each of felonious assault, possession of heroin, trafficking in heroin, assault, escape, obstructing official business, and endangering children. He moved to suppress all

---

[1] The trial court used the spelling "NOLEN" in the caption of the judgment entry of sentence; however, it appears that "NOLAN" is the correct spelling of Appellant's last name.

evidence obtained as a result of the traffic stop that led to the charges, and the trial court conducted a hearing on the motion.

{¶3}   Ohio State Highway Patrol Trooper Nick Lewis testified that on May 18, 2018, he was on duty in a marked cruiser traveling northbound on U.S. 23 into Lucasville, Ohio.  A gold Honda Accord passed him heading southbound on U.S. 23. Five or six months earlier, a detective from the Scioto County Sheriff's Office had advised Trooper Lewis that a vehicle with the same tag number as the Accord "was transporting drugs from Columbus to Portsmouth."  The tag number "came back to a black female out of Columbus."  Trooper Lewis turned his cruiser around to follow the vehicle.  As he was "coming up behind" the vehicle, he observed it "make a lane change from the left lane to the right lane without the use of a turn signal."  He "[caught] up to the vehicle" and saw it "cross over the white fog line several times."

{¶4}   Trooper Lewis testified that he initiated a traffic stop based on these traffic violations.  He approached the vehicle and made contact with the driver, Nolan, who had his three-year-old son in the back seat.  Trooper Lewis requested Nolan's driver's license and the vehicle registration.  Nolan advised the trooper that his "old lady" owned the vehicle.  Trooper Lewis testified that he saw marijuana on the center console by the gearshift.  He described the marijuana as "residue" in his report but described it as "two small pieces of marijuana" during his testimony.  Trooper Lewis testified that he had been a trooper for about 14 years, been trained to recognize illicit drugs such as marijuana, and "made thousands of marijuana arrest[s]."

{¶5}   Trooper Lewis asked Nolan to step out of the vehicle while he checked Nolan's driver's license and advised him of the reasons for the stop.  Once Nolan exited

the vehicle, Trooper Lewis asked whether he had any "weapons or anything" on him. Nolan said he did not.  Trooper Lewis testified that he requested permission to conduct a pat-down search, and Nolan "just kind of threw his hands up as - -as if to say go ahead."  Therefore, Trooper Lewis was "under the impression it was a consensual pat-down."  During the pat-down search, Nolan asked why Trooper Lewis had pulled him over.  Trooper Lewis said:  "You crossed over the white line a couple times when I come up behind you.  Widen your stance for me, please.  You got something down the front of your pants?"  Nolan denied having anything.

{¶6}   Trooper Lewis testified that he "felt a hard object in the middle of [Nolan's] pants, basically between his - -his buttocks."  Later, Trooper Lewis clarified that he could not tell if it was "between [Nolan's] buttocks or if it was up underneath his genitalia."  Trooper Lewis "recognized" the object "as contraband."  He explained the object "felt like a hard square object" that was "tied in a bag or something."  Trooper Lewis testified that he had been in a "scenario like this, probably 3 or 400 times," and every time he has located an object where he located the object in this case, it has "been drugs." However, Trooper Lewis testified, "I'm checking for weapons," and, "Obviously, I don't want to miss a weapon there."

{¶7}   After finishing the pat-down search, Trooper Lewis "went to grab [Nolan's] hands to handcuff him" and place him under arrest.  Nolan then "pulled away" and "put his left hand down the front of his pants" or "down towards the front of his pants." Trooper Lewis "tackled him into a ditch."  Trooper Lewis testified that Nolan punched him a few times, and Trooper Lewis restrained Nolan until backup arrived. At some

point, Trooper Lewis retrieved the object in Nolan's pants, and testing revealed it contained about 80 grams of heroin.

{¶8} On cross-examination, Trooper Lewis acknowledged he had been trained to prepare "complete and accurate" reports. He admitted his report did not include all of the details about the information he had received from the detective but testified this was because it pertained to an "ongoing investigation" he did not want to hamper. When defense counsel asked Trooper Lewis to read the portion of his report that referenced the signal violation, he said: "The second sentence. 'I turned on the vehicle. Observed it make a lane change from the left lane into the right lane.' " Upon further inquiry, Trooper Lewis acknowledged the report did not actually mention the signal violation. Trooper Lewis testified that he "thought it was in the report," and the omission was an oversight. Trooper Lewis agreed that the signal violation was "not visible on the video" and that when he responded to Nolan's inquiry about the reason for the stop, he did not mention that violation. Trooper Lewis noted that he was "doing the pat-down during that time."

{¶9} The trial court denied the motion to suppress. The court found that Trooper Lewis "observed the gold Honda Accord change lanes without signaling and travel across the right fog line several times as the vehicle proceeded south on US Rt. 23." The court noted that the state "offered a video of the Trooper's in-car camera which, while difficult to see at times, because of distance and focus, supports and bolsters the Trooper's testimony as to the edge line, or fog line violations." In addition, the court found that "within 1 ½ minutes from the time of the stop Trooper Lewis observed a small amount of marijuana on the center console." The court found that

Trooper Lewis asked Nolan to get out of the vehicle and "asked to pat him down." The court also found: "Upon patting the defendant down the Trooper testified, and the video shows Defendant begin to pull away from the trooper. Immediately the Trooper reached for the defendant's arm to place him in hand-cuffs whereupon Defendant begins to fight with the Trooper."

{¶10} The trial court concluded that Trooper Lewis had reasonable suspicion to stop the Accord because his testimony about the traffic violations was "credible." The court concluded about two minutes elapsed between the stop and physical altercation, which was "well within the time necessary to conduct a traffic stop, and the testimony at the hearing showed the Trooper was beginning that process when the altercation started." The court also determined that "the scope of the stop, and its purpose, was expanded when the Trooper observed the marijuana upon the center console area of Defendant's vehicle, upon his initial approach to the vehicle." Regarding the scope of the pat-down search, the court concluded the search "was in areas of Defendant's body, and conducted by Trooper Lewis in a manner to search, where a weapon may be found." The court found that nothing in the video showed "any manipulation of Defendant's person of [sic] clothing beyond what would be necessary in determining if he had a weapon." The court noted that the object Trooper Lewis found was not removed until "after Defendant pulled away from and assaulted the Trooper." The court also stated that Trooper Lewis "testified that he believed the item to be contraband based on its location and feel, although the Trooper[']s inquiry as to the nature of the item[ ] was interrupted by Defendant's attempted flight, and assault of the Trooper." Finally, the court concluded probable cause supported the arrest based on the

"observation of marijuana in Defendant's vehicle, the feeling of a hard object in Defendant's buttock area, the Trooper[']s experience of finding contraband hidden similarly, that Defendant initially began to pull away from the Trooper, and that before the Trooper could place Defendant under arrest, the fact that he ran and subsequently assaulted the Trooper."

{¶11} Nolan pleaded no contest to possession of heroin, assault, and escape. The trial court found him guilty of those offenses and dismissed the remaining counts. The court imposed an aggregate sentence of eight years in prison, with four years being mandatory.

## II. ASSIGNMENTS OF ERROR

{¶12} Nolan presents four assignments of error:

1. The trial court erred when it failed to grant Appellant's Motion to Suppress, where the traffic stop of his vehicle was conducted in the absence of reasonable suspicion, in violation of Appellant's rights under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

2. The trial court erred when it failed to grant Appellant's Motion to Suppress, where the scope of the stop was expanded in the absence of reasonable suspicion, in violation of Appellant's rights under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

3. The trial court erred when it failed to grant Appellant's Motion to Suppress, where the search of Appellant's person exceeded the scope of a *Terry* pat-down and was without probable cause, in violation of Appellant's rights under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

4. The trial court erred when it failed to grant Appellant's Motion to Suppress, where the Appellant was arrested without probable cause, in violation of his rights under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

## III.  STANDARD OF REVIEW

**{¶13}** In general "appellate review of a motion to suppress presents a mixed question of law and fact."  *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  The Supreme Court of Ohio has explained:

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.)  *Burnside* at ¶ 8.

## IV.  LAW AND ANALYSIS

**{¶14}** "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures."  *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15.  The Supreme Court of Ohio has held that these provisions provide the same protection in felony cases.  *State v. Hawkins*, ___ Ohio St.3d ___, 2019-Ohio-4210, ___ N.E.3d ___, ¶ 18. "This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion at trial of evidence obtained from an unreasonable search and seizure."  *State v. Petty*, 4th Dist. Washington Nos. 18CA26 & 18CA27, 2019-Ohio-4241, ¶ 11.

**{¶15}** " '[S]earches [and seizures] conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' "  (Footnotes omitted and alterations sic.)  *State v. Conley*, 4th Dist. Adams

No. 19CA1091, 2019-Ohio-4172, ¶ 17, quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "Once a defendant demonstrates that he or she was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible." *State v. Dorsey*, 4th Dist. Scioto No. 19CA3874, 2019-Ohio-3478, ¶ 13. In this case, the state conceded that Trooper Lewis acted without a warrant.

## A. The Traffic Stop

{¶16} In the first assignment of error, Nolan contends that the trial court erred when it denied his motion to suppress because Trooper Lewis lacked reasonable suspicion to initiate the traffic stop.

{¶17} This case involved an investigatory stop, which "must be supported by a reasonable, articulable suspicion that the driver has, is, or is about to commit a crime, including a minor traffic violation." *Petty*, 4th Dist. Washington Nos. 18CA26 & 18CA27, 2019-Ohio-4241, at ¶ 12. In *Petty*, we recently explained:

> "To justify a traffic stop based upon reasonable suspicion, the officer must be able to articulate specific facts that would warrant a person of reasonable caution to believe that the driver has committed, or is committing, a crime, including a minor traffic violation." *State v. Taylor*, 2016-Ohio-1231, 62 N.E.3d 591, ¶ 18 (4th Dist.). The existence of reasonable suspicion depends on whether an objectively reasonable police officer would believe that the driver's conduct constituted a traffic violation based on the totality of the circumstances known to the officer at the time of the stop.
>
> Moreover, a police officer may stop the driver of a vehicle after observing even a de minimis violation of traffic laws. "[A] traffic stop with the proper standard of evidence is valid regardless of the officer's underlying ulterior motives as the test is merely whether the officer 'could' have performed the act complained of; pretext is irrelevant if the action complained of was permissible." *See State v. Koczwara*, 7th Dist. Mahoning No. 13MA149, 2014-Ohio-1946, ¶ 22 * * *.

(Citations omitted. Alteration sic.) *Id.* at ¶ 12-13.

**{¶18}** Initially, Nolan contends the trial court's finding that Trooper Lewis observed a signal violation is not supported by competent, credible evidence. Trooper Lewis testified that he saw Nolan commit a traffic violation when he moved the Accord "from the left lane to the right lane without the use of a turn signal." *See generally* R.C. 4511.39(A) ("No person shall * * * move right or left upon a highway * * * without giving an appropriate signal in the manner hereinafter provided"). Nolan asserts this testimony lacked credibility because Trooper Lewis did not mention the violation when Nolan asked about the reason for the stop or in his report, Trooper Lewis did not cite Nolan for the violation, and no violation "was apparent from the video." Thus, "the report, the video recording, and Trooper Lewis' own prior recorded statement demonstrated that the sole basis for the stop was an alleged marked lanes violation."

**{¶19}** The trial court was free to believe Trooper Lewis' testimony that he observed a signal violation and that his omission of the violation from his report was an oversight. "The trier of fact is free to believe all, part, or none of the testimony of any witness[.]" *State v. Hammond*, 4th Dist. Ross No. 18CA3662, 2019-Ohio-4253, ¶ 56. We accord deference to the trier of fact on credibility issues because "it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *Id.* Even though Trooper Lewis did not mention the violation when Nolan inquired about the basis for the stop, Nolan made the inquiry when Trooper Lewis was preoccupied with the pat-down search. The trial court had no duty to discount Trooper Lewis' testimony because he decided not to cite Nolan, who was charged with multiple felony offenses as a result of the traffic stop, for the

minor traffic violation. Moreover, while the video footage does not support Trooper Lewis' testimony about the signal violation, the footage also does not contradict his testimony. *See generally State v. Shisler*, 1st Dist. Hamilton Nos. C-050860, C-050861, C-050878, C-050879, 2006-Ohio-5265, ¶ 2-3, 6 (deferring to trial court's finding that officer's testimony that she observed a marked lanes violation at a particular intersection was credible even though the video footage did not show the violation due to the camera angle, the officer's report did not mention the violation, the officer only cited the driver for weaving at a different intersection, and the video footage did not reflect that the driver had been weaving at that location).

{¶20} The trial court's finding that Trooper Lewis observed a signal violation is supported by competent, credible evidence. As a result, Trooper Lewis had reasonable suspicion to initiate the traffic stop, and we overrule the first assignment of error. Nolan's additional contention that Trooper Lewis did not have reasonable suspicion to initiate the stop based on marked lanes violations is moot, so we do not address it. *See* App.R. 12(A)(1)(c).

### B. The Scope of the Traffic Stop

{¶21} In the second assignment of error, Nolan contends that the trial court erred when it denied his motion to suppress because after Trooper Lewis collected his identification, Trooper Lewis expanded the scope of the stop without reasonable suspicion. Nolan essentially challenges the trial court's determination that "the scope of the stop, and its purpose, was expanded when the Trooper observed the marijuana upon the center console area of Defendant's vehicle, upon his initial approach to the vehicle." Nolan contends that Trooper Lewis' testimony about his observation of the

marijuana, which the trooper initially characterized as "residue" but later characterized as "pieces," is "simply not credible" because photographs show the marijuana was "infinitesimal" and the observation was "not accompanied by a detection of the odor of marijuana, the observation of paraphernalia, or any admissions by [Nolan.]" Nolan asserts that Trooper Lewis' testimony must be "viewed in the context of his other factual misrepresentations." Nolan does not elaborate on these alleged misrepresentations, but notably, in the previous section, we rejected the contention that the trial court could not credit the trooper's testimony about the signal violation.

{¶22} "The scope and duration of a routine traffic stop 'must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop.' " (Omission sic.) *State v. Debrossard*, 4th Dist. Ross No. 13CA3395, 2015-Ohio-1054, ¶ 16, quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.E.2d 229 (1983) (plurality opinion). "Once a driver has been lawfully stopped, an officer may order the driver to get out of the vehicle without any additional justification." *State v. Kilbarger*, 4th Dist. Hocking No. 11CA23, 2012-Ohio-1521, ¶ 16. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.E.2d 331, fn. 6 (1977). " '[T]he officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates.' " *Debrossard* at ¶ 17, quoting *State v. Aguirre*, 4th Dist. Gallia No. 03CA5, 2003-Ohio-4909, ¶ 36. " ' "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." ' " *Id.*, quoting *Aguirre* at ¶

36, quoting *State v. Carlson*, 102 Ohio App.3d 585, 598, 657 N.E.2d 591 (9th Dist.1995).

**{¶23}** "A seizure justified only by a police-observed traffic violation * * * 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." (Alterations sic.) *Rodriguez v. United States*, ___ U.S. ___, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015), quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). Although a police officer "may conduct certain unrelated checks during an otherwise lawful traffic stop * * * he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 1615. "An officer may expand the scope of the stop and may continue to detain the vehicle without running afoul of the Fourth Amendment if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot." *State v. Rose*, 4th Dist. Highland No. 06CA5, 2006-Ohio-5292, ¶ 17. "[I]f a law enforcement officer, during a valid investigative stop, ascertains 'reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual.' " *Id.* at ¶ 17, quoting *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762 (1997).

**{¶24}** The trial court's finding that Trooper Lewis observed marijuana on the center console is supported by competent, credible evidence. Although Nolan challenges the credibility of the trooper's testimony, again, we accord deference to the trier of fact on credibility issues because "it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to

weigh their credibility." *Hammond*, 4th Dist. Ross No. 18CA3662, 2019-Ohio-4253, at ¶ 56. The court was free to believe Trooper Lewis' testimony that based on his training and experience, he could identify the objects on the center console as marijuana. Thus, even if we agreed with Nolan that Trooper Lewis "abandoned" the mission of the traffic stop after collecting Nolan's identification, the observation of marijuana gave Trooper Lewis reasonable suspicion of additional criminal activity that justified an expansion of the scope of the stop. We overrule the second assignment of error.

## C. The Pat-Down Search

{¶25} In the third assignment of error, Nolan contends that the trial court erred when it denied his motion to suppress because the search of his person "exceeded the scope of a *Terry* pat-down and was without probable cause." Nolan asserts that a pat-down search was not justified pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.E.2d 889 (1968), because the state failed to establish that Trooper Lewis had a reasonable belief that Nolan might be armed and dangerous. Rather, Nolan asserts that Trooper Lewis' testimony indicates the pat-down search was predicated on the alleged observation of a "minor misdemeanor amount of marijuana residue on the center console." Nolan notes that the trial court did not find that he consented to a pat-down search and maintains that under the totality of the circumstances "raising of the arms constitutes submission to authority, rather than affirmative consent." In the alternative, Nolan maintains that even if a pat-down search was justified, the scope of the search was unlawful because Trooper Lewis "did far more than pat-down the outside of [Nolan's] clothes." "Rather, he lifted, grasped and manipulated [Nolan's] clothing, including his pants and shirt." Nolan claims Trooper Lewis improperly

searched between Nolan's buttocks without a reasonable belief that he might find a weapon there. Nolan notes Trooper Lewis did not testify that he had been trained to conduct a pat-down search of that area, did not testify that he was aware of any officer ever discovering a weapon in that location, and testified that he had personally only ever found drugs there.

### 1. Justification for the Pat-Down Search

**{¶26}** In ruling on the motion to suppress, the trial court did not address whether a pat-down search was justified. Rather, the court immediately proceeded to consider whether Trooper Lewis exceeded the lawful scope of a pat-down search for weapons. This may have been because the relevant headings in Nolan's motion to suppress and post-hearing brief, much like his third assignment of error, focus on the scope of the pat-down search. Nonetheless, Nolan did raise the justification issue in his motion to suppress, and he addressed it again, albeit briefly, in his post-hearing brief. The state responded to this argument, asserting that the pat-down search was justified under *Terry*, justified because there was probable cause to believe Nolan had contraband on his person, and justified because Nolan consented to the search.

**{¶27}** On appeal, Nolan does not assign error to the trial court's failure to specifically address whether a pat-down search was justified. Crim.R. 12(F) states: "Where factual issues are involved in determining a motion, the court shall state its essential findings on the record." However, "Crim.R. 12(F) is not self-executing; if a defendant does not request findings of fact, any error is forfeited." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 112. "[E]ven though the rule's language indicates that findings of fact are mandatory when the resolution of factual

issues is necessary to determine the motion to suppress, such findings are not necessary when the record is sufficient for the reviewing court to independently determine whether the motion should have been granted."  *State v. Neal*, 4th Dist. Lawrence Nos. 14CA31 & 14CA32, 2015-Ohio-5452, ¶ 30, citing *State v. Waddy,* 63 Ohio St.3d 424, 443, 588 N.E.2d 819 (1992).  Nolan did not request Crim.R. 12(F) findings.  Moreover, the parties' arguments imply, and we agree, that the record is sufficient for us to independently determine whether Trooper Lewis was justified in conducting a pat-down search.

**{¶28}** Once an officer initiates a lawful traffic stop, the officer "may conduct a patdown search for weapons upon [an occupant of] the vehicle if the officer has a 'reason to believe that [the officer] is dealing with an armed and dangerous individual, regardless of whether [the officer] has probable cause to arrest the individual for a crime.' " (First alteration added.  Second and third alterations sic.)  *State v. Kelley*, 4th Dist. No. 10CA3182, 2011-Ohio-3545, ¶ 18, quoting *Terry*, 392 U.S. at 27, 88 S.Ct. 1868, 20 L.E.2d 889.  "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger."  *Terry* at 27.

**{¶29}** Trooper Lewis did not testify that he feared for his safety; however, there is " 'no legal requirement that a policeman must feel "scared" by the threat of danger. Evidence that the officer was aware of sufficient specific facts as would suggest he was in danger satisfies the constitutional requirement.' "  *State v. Evans*, 67 Ohio St.3d 405, 413, 618 N.E.2d 162 (1993), quoting *United States v. Tharpe*, 536 F.2d 1098, 1101 (5th

Cir.1976), *overruled on other grounds*, *United States v. Causey*, 834 F.2d 1179, 1184 (5th Cir.1987). "Ohio courts have recognized that people involved in illegal drug activity are often armed and officers have a right to pat-down those people for their protection." *State v. Williams*, 4th Dist. Ross No. 10CA3162, 2011-Ohio-763, ¶ 13. " 'The right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed.' " *Id.* at ¶ 13, quoting *Evans* at 413. Here, five or six months prior to the traffic stop, a detective told Trooper Lewis that a vehicle with the same tag number as the Accord was being used to transport drugs from Columbus to Portsmouth, and during the stop, Trooper Lewis observed a small amount of marijuana in plain view.

**{¶30}** Even if a reasonably prudent person would not have been warranted in the belief that Nolan was armed and dangerous under these circumstances, Trooper Lewis was justified in conducting a pat-down search based on Nolan's consent. "One of the well-delineated exceptions to the general prohibition against a warrantless search occurs when the person consents to the search." *State v. Bloomfield*, 4th Dist. Lawrence No. 14CA3, 2015-Ohio-1082, ¶ 29. " 'No Fourth Amendment violation occurs when an individual voluntarily consents to a search.' " *State v. Clements*, 4th Dist. Hocking No. 15CA19, 2016-Ohio-3201, ¶ 20, quoting *State v. Carothers*, 2015-Ohio-4569, 47 N.E.3d 483, ¶ 25 (5th Dist.), citing *United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002). Consent "that is 'coerced by threats or force, or granted only in submission to a claim of lawful authority,' is invalid." *Debrossard*, 4th Dist. Ross No. 13CA3395, 2015-Ohio-1054, at ¶ 37, quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 233, 93 S.Ct. 2041, 36 L.E.2d 854 (1973).

"Such 'lawful authority' is a law enforcement officer's express or implied false claim that the officer can immediately proceed to make the search regardless of consent." *Id.*

**{¶31}** "Ordinarily, the issue of whether an individual voluntarily consented to a search is a question of fact, not a question of law." *Id.* at ¶ 40. The state must prove by clear and positive evidence that the necessary consent was obtained and "was freely and voluntarily given." *Id.* at ¶ 39. " 'Clear and positive evidence' is the substantial equivalent of clear and convincing evidence," *id.*, which is

> "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 22, 2018-Ohio-5110, 123 N.E.3d 895, ¶ 12, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶32}** " ' "[C]onsent [to search] may be implied by the circumstances surrounding the search, by the person's prior actions or agreements, or by the person's failure to object to the search." ' " (First alteration sic. Second alteration and footnotes omitted in *Lane.*) *Debrossard* at ¶ 34, quoting *State v. Lane,* 2d Dist. Montgomery No. 21501, 2006-Ohio-6830, ¶ 40, quoting Kuras, Levy, Burns, & Lowry, *Warrantless Searches and Seizures*, 90 Geo.L.J. 1130, 1172 (2002). Therefore, " ' "a search may be lawful even if the person giving consent does not recite the talismanic phrase: 'You have my permission to search.' " ' " *Id.*, quoting *Lane* at ¶ 40, quoting *United States v. Buettner-Janusch*, 646 F.2d 759, 764 (2d Cir.1981). We have explained:

> "Important factors for the trial court to consider in determining whether a consent was voluntary include: (1) the suspect's custodial status and the

length of the initial detention; (2) whether the consent was given in public or at a police station; (3) the presence of threats, promises, or coercive police procedures; (4) the words and conduct of the suspect; (5) the extent and level of the suspect's cooperation with the police; (6) the suspect's awareness of his right to refuse to consent and his status as a 'newcomer to the law'; and (7) the suspect's education and intelligence."

*Clements* at ¶ 21, quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 23.

**{¶33}** In this case, Nolan had been temporarily detained during a traffic stop and had exited his vehicle at the trooper's request when he consented to the search. The detention, standing alone, does not "demonstrate a coerced consent to search, given that even being in formal police custody at the time of consent is insufficient to demonstrate coercion." *State v. Lattimore*, 10th Dist. Franklin No. 03AP-467, 2003-Ohio-6829, ¶ 17, citing *United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) ("the fact of custody alone has never been enough in itself to demonstrate a coerced * * * consent to search"). Nolan had been detained for less than two minutes when he consented to the pat-down search. He consented in public, and Trooper Lewis' testimony and the video footage demonstrate the absence of any threats, promises, or coercive police procedures. When Trooper Lewis asked Nolan for consent to a pat-down search, Nolan indicated his consent by immediately putting his arms up in the air. Nolan did not object at any point during the pat-down search. The video footage indicates Nolan was cooperative until Trooper Lewis began to arrest him. The state did not introduce any evidence that Nolan was aware of his right to refuse to consent or had a criminal history. However, "[v]oluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to

demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Schneckloth*, 412 U.S. at 248-249, 93 S.Ct. 2041, 36 L.Ed.2d 854. Finally, while the record contains no evidence detailing Nolan's education or intelligence, it appears from the video footage that Nolan possessed adequate intelligence to understand the events as they occurred.

**{¶34}** Based on the foregoing, the state proved by clear and positive evidence that Nolan voluntarily consented to a pat-down search.

### 2. Scope of the Pat-Down Search

**{¶35}** The parties appear to agree that in this case, the permissible scope of any consensual pat-down search was the same as a *Terry* search. *Terry* permits an officer "to conduct a carefully limited search of the outer clothing" of an individual "in an attempt to discover weapons which might be used to assault him." *Terry,* 392 U.S. at 30, 88 S.Ct. 1868, 20 L.E.2d 889. " 'The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue [the officer's] investigation without fear of violence * * *.' " (Omission sic.) *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), quoting *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Thus, a *Terry* search must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry* at 29. "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Dickerson* at 373.

**{¶36}** Trooper Lewis did not exceed the scope of a *Terry* search when he discovered the hard object in Nolan's pants. Trooper Lewis initially testified he felt a

hard object "basically between" Nolan's buttocks but later clarified that he could not tell if the object was "between his buttocks or if it was up underneath his genitalia." Although Trooper Lewis acknowledged that he personally had only ever found drugs in that area, he testified, "I'm checking for weapons," and "Obviously, I don't want to miss a weapon there," implying it was physically possible to conceal a weapon in the area searched. Given this testimony and the video footage of the pat-down search, the trial court's finding that the search was conducted in areas of Nolan's body "where a weapon may be found" is supported by competent, credible evidence. Moreover, the video footage reveals that the pat-down search was limited to Nolan's outer clothing and does not reveal that Trooper Lewis' discovery of the hard object involved any manipulation of clothing beyond what would be necessary to determine if Nolan had a weapon. Trooper Lewis did admit that he held onto Nolan's shirt during the pat-down search for "officer safety purposes," and in the video footage, it appears that at one point after Trooper Lewis discovered the hard object, he grasped and lifted part of the front of Nolan's pants near his waist. However, those actions did not result in the discovery of any contraband.

**{¶37}** For the foregoing reasons, we overrule the third assignment of error.

### D.  The Arrest

**{¶38}** In the fourth assignment of error, Nolan contends that the trial court erred when it denied the motion to suppress because Trooper Lewis arrested him without probable cause.  Nolan argues that even if Trooper Lewis' testimony about the marijuana was credible, the amount observed would support only a minor misdemeanor possession charge, which is not an arrestable offense.  Nolan also asserts that Trooper

Lewis did not have probable cause to arrest him based on the discovery of the hard object. Nolan again claims that Trooper Lewis discovered the object as a result of an unlawful search, but we rejected this argument in Section IV.C. In addition, he argues that Trooper Lewis could not seize the object and arrest him pursuant to the plain feel doctrine because the contour and mass of the object did not make its identity immediately apparent. Finally, Nolan asserts that the trial court improperly found that additional facts supported a finding of probable cause, i.e., that he pulled away from the trooper, ran, and assaulted the trooper. Nolan asserts that these events are immaterial because they occurred after Trooper Lewis initiated the arrest, and even if they were relevant, the court's findings "are contradicted by the competent, credible evidence."

**{¶39}** " 'A seizure is equivalent to an arrest when (1) there is an intent to arrest; (2) the seizure is made under real or pretended authority; (3) it is accompanied by an actual or constructive seizure or detention; and (4) it is so understood by the person arrested.' " *State v. Jones*, 4th Dist. Washington No. 11CA13, 2012-Ohio-1523, ¶ 11, quoting *State v. Taylor*, 106 Ohio App.3d 741, 749, 667 N.E.2d 60 (2d Dist.1995), citing *State v. Barker*, 53 Ohio St.2d 135, 372 N.E.2d 1324 (1978), syllabus. "A warrantless arrest is constitutionally valid when an arresting officer has probable cause to believe that an individual has committed a crime." *State v. Richards*, 4th Dist. Athens No. 14CA1, 2015-Ohio-669, ¶ 26. The existence of probable cause is a legal question subject to de novo review. *Williams*, 4th Dist. Ross No. 10CA3162, 2011-Ohio-763, at ¶ 16. "Probable cause for a warrantless arrest requires that the arresting officer, at the time of the arrest, possess sufficient information that would cause a reasonable and prudent person to believe that a criminal offense has been or is being committed."

*State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 39. In determining whether probable cause existed, courts must consider " 'the totality of the facts and circumstances, including a police officer's specialized knowledge.' " *Williams* at ¶ 16, quoting *State v. Hansard*, 4th Dist. Scioto No. 07CA3177, 2008-Ohio-3349, ¶ 35.

**{¶40}** Pursuant to " 'the "plain feel" doctrine, if in the process of conducting a limited pat down search for weapons an officer detects an object whose criminal character is immediately apparent to him, he is justified in seizing the object from the * * * person being searched.' " (Omission sic.) *State v. Fowler*, 4th Dist. Ross. No 17CA3599, 2018-Ohio-241, ¶ 17, quoting *State v. Crayton*, 2017-Ohio-705, 86 N.E.3d 77, ¶ 29 (11th Dist.). " 'In the context of the plain feel exception to the warrant requirement, "immediately apparent" is a term of art-it simply means the officer has probable cause to associate the object with criminal activity.' " *Williams* at ¶ 15, quoting *Hansard* at ¶ 31.

**{¶41}** In this case, the criminal character of the object in Nolan's pants was "immediately apparent." Trooper Lewis had information that a vehicle with the same tag number as the Accord was transporting drugs from Columbus to Portsmouth. Although the information was five or six months old, Trooper Lewis observed marijuana in plain view in the vehicle. In addition, Trooper Lewis testified that every time he has located an object in the location where he found the hard object in Nolan's pants, it has been drugs.

**{¶42}** Even though Trooper Lewis did not remove the object immediately after its discovery, once Trooper Lewis felt the object, he had probable cause to remove it and

arrest Nolan. *See Williams* at ¶ 3-4, 17-20 (trooper had probable cause to remove package of OxyContin pills from defendant's person and arrest him pursuant to plain feel doctrine where during a traffic stop, a canine alerted the trooper to presence of drugs in a vehicle while the defendant was inside it, the trooper felt a hard, golf ball-like object between the defendant's buttocks during a pat-down search, and the trooper testified that he believed the object was "some form of narcotic, an illegal drug" because he "had several stops" where he "found something in the rear of someone's pants, and it's always been an illegal drug"); *State v. Brown*, 4th Dist. Ross No. 18CA3644, 2019-Ohio-1112, ¶ 23 (officer could seize object pursuant to plain feel doctrine where during pat-down search, he felt "a large bulge between [the defendant's] legs, which he immediately knew was contraband, based on his experience in drug investigations"). Therefore, it is not necessary for us to determine the exact moment of Nolan's arrest and whether other facts relied on by the trial court also support a finding of probable cause to arrest. We overrule the fourth assignment of error.

## V. CONCLUSION

**{¶43}** Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
Michael D. Hess, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**