[Cite as *State v. Clements*, 2016-Ohio-3201.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 15CA19 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| ROBERT E. CLEMENTS, | : | |
| Defendant-Appellant. | : | **RELEASED: 5/25/2016** |

APPEARANCES:

Jason A. Sarver, Rockbridge, Ohio, for appellant.

Laina Fetherolf, Hocking County Prosecuting Attorney, for appellee.

Harsha, J.

{¶1}   After the Hocking County Court of Common Pleas denied his motion to suppress evidence obtained as a result of a warrantless search of his residence, Robert E. Clements pleaded no contest to illegal manufacture of drugs and aggravated possession of drugs.  The trial court accepted the plea and found him guilty.

{¶2}   Clements asserts that the trial court erred in denying his motion to suppress because the state failed to meet its burden of establishing that he voluntarily consented to the search of his home.  The state introduced evidence at the suppression hearing that (1) Clements signed a consent-to-search form, (2) he was not in custody at that time, (3) the deputies did not engage in coercive police tactics, e.g., they did not state that if Clements did not consent to the search of the house, they would obtain a search warrant, (4) Clements cooperated with the deputies by admitting that he had marijuana in his safe and consenting to the search, and (5) there was no evidence that Clements could not understand based on his education and intelligence.  Although the

trial court's additional finding that Clements was informed of his right to refuse to consent to the search is not supported by competent, credible evidence, knowledge of the right to refuse consent to search is not a prerequisite to establishing voluntary consent.  The vast majority of the relevant findings of fact made by the trial court are supported by competent, credible evidence. And based on the truth of those facts an examination of the totality of the circumstances leads us to the conclude that Clements voluntarily consented to the search of his home.

{¶3}    Clements also contends that the trial court erred because an illegal entry and search before he gave his consent poisoned the subsequent search, which uncovered the evidence of drugs.  Before getting Clements's consent one of the deputies had followed his daughter into the house without obtaining her consent to enter. Over the course of a few minutes the deputy reentered the residence a couple more times and conducted a brief search of the living room, kitchen, and bathroom without disturbing or seizing anything.  Although the trial court determined that the deputy's presence in the home was improper, it concluded that suppression of the evidence obtained by the subsequent consent search was not required because there was no causal connection between the impropriety and the evidence.  We agree that because the evidence seized from Clements's safe was not derivative of or tainted by the deputy's prior improper entry and limited search of the home, suppression was not required.  We reject Clements's second argument.

{¶4}    Therefore, we overrule Clements's assignment of error and affirm the judgment of the trial court.

I. FACTS

{¶5} The Hocking County Grand Jury returned an indictment charging Robert E. Clements with two counts of illegal manufacture of drugs in violation of R.C. 2925.04(A), a felony of the second degree, one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A), a felony of the third degree, and one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a felony of the fifth degree. All four counts involved methamphetamine, a schedule II controlled substance.

{¶6} After Clements entered a plea of not guilty, he filed a motion to suppress all evidence obtained as a result of an illegal search and seizure occurring at his residence. He claimed that he did not voluntarily consent to the warrantless search of his residence. He also argued that his consent was given only after a deputy sheriff had already illegally entered and remained in the home.

{¶7} At the hearing on the suppression motion, the state presented the testimony of three deputy sheriffs as well as footage from a body camera of one of the deputies. The record of the hearing reveals the Fairfield-Hocking Major Crimes Unit and the Sheriff's Interdiction Unit received complaints that Robert Clements was manufacturing and using methamphetamine at his home. Deputy Sheriffs Trent Woodgeard, Alex Brown, and Duane Covert, members of the special units, went to Clements's home to speak with him about the complaints. When they arrived at the home, the deputies met Clements's daughter, Beth, in the front yard.

{¶8} After some limited conversation in the yard, the officers advised Beth that they were there because of drug complaints. Beth immediately went inside the house and Deputy Woodgeard followed her into the house through an open door after saying,

"Let me talk to you for a minute."  Notwithstanding Deputy Woodgeard's repeated testimony that he went inside only after he asked for Beth's permission and she agreed, the videotape of the encounter showed that no permission was requested or granted before the deputy followed Beth into the home through the open door.

{¶9}    Deputy Woodgeard then proceeded to ask Beth where her father was. She said he wasn't there, but was on his way home.  The deputy then explained that confidential informants had advised them that her father was involved in illegal activity involving methamphetamine at the house.  When asked whether she had or used drugs, Beth admitted that she occasionally smoked marijuana.  At that time Clements returned to the residence and began talking to the two other deputies outside in the front yard. Deputy Woodgeard and Beth then went out to the porch, where Beth asked if she could take a shower to get ready to take her children to a doctor's appointment.

{¶10}  When Deputy Woodgeard asked for her identification, Beth went inside the home, and the deputy followed her inside the house a second time.  After getting identification from her, he followed her to the bathroom to make sure no one was there. As she took a shower Deputy Woodgeard phoned in her identification to verify that there were no warrants for her. He walked around to get better reception and shined his flashlight around the living room.  After he learned that Beth had no outstanding warrants, Deputy Woodgeard walked out onto the porch for a few seconds and then reentered the house for a third time to wait for Beth to come out.  Deputy Woodgeard then walked and shined his flashlight around the kitchen before returning to the porch.

{¶11}  When Deputy Woodgeard walked back outside, Clements was still talking to Deputies Covert and Brown.  They testified that when Clements arrived they told him

that he was free to leave, and that he was not in custody, detention, or arrest. They did not threaten to get a warrant if he did not consent to a search of his residence. Deputy Covert testified they told Clements they had heard he was cooking methamphetamine again and that Clements denied that but admitted he smoked marijuana, which he had in his house. Then Clements signed the consent-to-search form after the deputy showed it to him and told him to read it over and sign it if he was agreeable to a search. According to Deputy Covert, he witnessed Clements sign the form, and Deputy Brown signed as a witness. Deputy Brown testified that he did not recall witnessing Clements sign the consent-to-search form, but the videotape showed him signing some form on a clipboard that is handed to him, and that would have been the form he signed at that point if he had witnessed Clements sign the form.

{¶12} The deputies testified that they did not observe anything that would lead them to believe that Clements had any trouble understanding what it meant to consent to search or that he had any mental or physical condition that rendered him less competent than anyone else. They also all testified that they did not specifically inform Clements of his right to refuse to consent to the search. The consent form was eventually lost, and it was not introduced into evidence.

{¶13} After Clements told the deputies that he had marijuana in his safe and signed the consent-to-search form, he led the deputies into his house and opened his safe. Inside the safe the deputies found some marijuana and three coffee filters containing a white powder substance that was ultimately determined to be methamphetamine.

**{¶14}** The trial court issued a decision denying Clements's motion to suppress, because it determined that Clements voluntarily consented to the search. The trial court further concluded that Deputy Woodgeard's presence in the home before Clements consented to the search was "improper," but that suppression was unnecessary "because it cannot find that there is a causal connection between this problem and the evidence. If the search was based on anything that Woodgeard saw while he was walking about while Ms. Clements was showering, then this court would suppress the evidence."

**{¶15}** Clements withdrew his not guilty plea and entered a no contest plea to one count of illegal manufacture of drugs and one count of aggravated possession of drugs in return for the dismissal of the remaining two counts. The trial court accepted the plea, convicted him, and sentenced him to an aggregate four-year prison term.

## II. ASSIGNMENT OF ERROR

**{¶16}** Clements assigns the following error for our review:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.

## III. STANDARD OF REVIEW

**{¶17}** In his sole assignment of error Clements asserts that the trial court erred in denying his motion to suppress. In general, "appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court

must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* " 'Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " *Codeluppi* at ¶ 7, quoting *Burnside* at ¶ 8.

## IV. LEGAL ANALYSIS

### A.  Fourth Amendment Search

**{¶18}** Clements asserts that the evidence concerning methamphetamine manufacture and use should have been suppressed because it was seized under a warrantless search as prohibited by the United States and Ohio Constitutions."The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures."  *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15.  The constitutional provisions contain nearly identical language and have been interpreted to afford the same protection.  *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11. The Fourth Amendment protects against two types of unreasonable intrusions:  1) searches, which occur when an expectation of privacy that society is prepared to consider reasonable is infringed upon and 2) seizures, which occur when there is some meaningful interference with an individual's liberty or possessory interest in property. *See State v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).

**{¶19}** "[S]earches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated

exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible." *State v. Johnson*, 4th Dist. Scioto No. 14CA3618, 2014-Ohio-5400, ¶ 13, citing *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 98.

### B.  Consent

{¶20}  "One of the well-delineated exceptions to the general prohibition against a warrantless search occurs when the person consents to the search." *See State v. Bloomfield*, 4th Dist. Lawrence No. 14CA3, 2015-Ohio-1082, ¶ 29, citing *State v. Ossege*, 2014-Ohio-3186, 17 N.E.3d 30, ¶ 13 (12th Dist.), and *State v. Morris*, 42 Ohio St.3d 307, 318, 329 N.E.2d 85 (1975). Consent is not an exception to the warrant requirement that is premised upon exigent circumstances; rather it is a decision by a citizen to waive Fourth Amendment rights. Katz, *Ohio Arrest, Search & Seizure*, Section 20:3 (2015). "No Fourth Amendment violation occurs when an individual voluntarily consents to a search." *State v. Carothers*, 2015-Ohio-4569, 47 N.E.3d 483, ¶ 25 (5th Dist.), citing *United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002).  Consent searches are an important tool in police investigations because "a valid consent may be the only means of obtaining important and reliable evidence." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227-228, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

{¶21}  "The question of whether consent to a search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the

totality of the circumstances." *State v. Roberts*, 110 Ohio St.3d 1168, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 99. "The burden rests on the prosecution to establish that the consent was voluntarily given." *See generally* Katz, *Ohio Arrest, Search & Seizure*, at Section 20:3. "Important factors for the trial court to consider in determining whether a consent was voluntary include: (1) the suspect's custodial status and the length of the initial detention; (2) whether the consent was given in public or at a police station; (3) the presence of threats, promises, or coercive police procedures; (4) the words and conduct of the suspect; (5) the extent and level of the suspect's cooperation with the police; (6) the suspect's awareness of his right to refuse to consent and his status as a 'newcomer to the law'; and (7) the suspect's education and intelligence." *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 23, citing *Schneckloth*, 412 U.S. at 248-249 , 93 S.Ct. 2041, 36 L.Ed.2d 854; *see also State v. Hannah*, 10th Dist. Franklin No. 15AP-12, 2015-Ohio-4964, ¶ 20.

{¶22} Applying the *Schneckloth* factors the trial court credited the state's evidence that Clements voluntarily signed the consent-to-search form. Although the deputies did not produce the form because they could not locate it and Deputy Brown's testimony was conflicting about whether he witnessed Clements sign the form, the trial court's finding that Clements signed the form is supported by competent, credible evidence, including the testimony of Deputies Covert and Woodgeard. Although the state is incorrect in its assertion that the videotape "clearly shows a clipboard and pen being passed between Deputy Brown and [Clements]," the videotape does show Deputy Brown signing a document on a clipboard, although it is not clear from the videotape who passed it to him.

{¶23} Application of the relevant factors supports the trial court's conclusion that Clements voluntarily consented to the search of his residence. First, Clements was not in police custody or detention when he consented to the search. According to the uncontroverted testimony of the deputies, he was specifically advised that he was free to leave.

{¶24} Second, the consent was not given at a police station. Instead, it was in the front yard of Clements's home.

{¶25} Third, there were no threats or promises. The deputies testified that they did not threaten Clements that they would get a warrant if he did not consent to a search of his residence. Although Clements asserts on appeal that the presence of Deputy Woodgeard entering and exiting his home while he was being questioned established a coercive atmosphere, there is no evidence that it impacted Clements's ability to voluntarily consent. The deputy's intrusion and search were limited in their scope and occurred over the span of a few minutes, and he did not seize anything from the house.

{¶26} Fourth, Clements willingly volunteered that he had marijuana in his safe when he consented to the search. He then led the officers to his safe, which contained the incriminating evidence of methamphetamine. By his words and conduct, Clements indicated that he was voluntarily consenting to the search and otherwise cooperating with the police.

{¶27} Fifth, regarding his awareness of his right to refuse to consent to the search, the trial court found that Clements was informed of his right to refuse. The trial court's finding on this factor is not supported by competent, credible evidence because

the deputies all testified that they did not specifically inform Clements of his right to refuse to consent to the search. Nevertheless, "[v]oluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Schneckloth*, 412 U.S. at 248-249, 93 S.Ct. 2041, 36 L.Ed.2d 854; *see also State v. Smoot*, 2015-Ohio-2717, 38 N.E.3d 1094, ¶ 42. It also appears that Clements was not a "newcomer to the law" because Deputy Brown noted that it was not the first time they had been to his residence and Deputy Covert advised him that they had heard that he was cooking methamphetamine "again."

**{¶28}** Finally, notwithstanding Clements's suggestion that he was impaired due to a stroke and that he had trouble hearing, the deputies testified that he did not appear to have any mental or physical difficulties impairing his ability to understand what his consent to the search meant; Clements did not introduce any evidence to the contrary at the suppression hearing.

**{¶29}** The vast majority of the findings of fact made by the trial court are supported by competent, credible evidence—including its finding that Clements signed the consent-to-search form—and after accepting the truth of those facts, our independent examination of the totality of the circumstances results in the conclusion that Clements voluntarily consented to the search of his home. We reject his first argument.

C.  Derivative Evidence

**{¶30}** Clements also contends that the trial court erred because an illegal entry and search of his residence by one of the deputies before he consented poisoned the subsequent search, which uncovered the evidence of drugs.

**{¶31}** " 'The exclusionary rule reaches not only the primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality, or "fruit of the poisonous tree." ' " *See State v. Foster*, 3d Dist. Allen No. 1-14-54, 2015-Ohio-3401, ¶ 11, quoting *State v. Carter*, 69 Ohio St.3d 57, 67-68, 630 N.E.2d 355 (1994); *see also Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). "The derivative-evidence rule, or fruit-of-the-poisonous-tree doctrine as it is widely known, requires suppression of evidence that was seized in a seemingly lawful manner but about which police learned because of a prior constitutional violation such as an illegal search or seizure." *State v. McLemore*, 197 Ohio App.3d 726, 2012-Ohio-521, 968 N.E.2d 612, ¶ 20 (2d Dist.), citing *Nardone v. United States*, 308 US. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). "The exclusionary rule reaches not only the primary evidence obtained as a direct result of an illegal search or seizure, but also evidence that is subsequently discovered and derivative of that prior illegality." *Id.*

**{¶32}** We agree with the trial court's conclusion that Deputy Woodgeard's warrantless entry and limited search of the residence was improper because he entered it without the permission of Clements or his daughter. Instead, he simply followed Clements's daughter inside the house without asking for or receiving her permission.

**{¶33}** Nevertheless, under the derivative-evidence rule, "[t]here must be a causal connection between the constitutional violation and the derivative evidence for

the latter to be suppressed.  This stands to reason because the latter is excluded solely because of its connection to the constitutional violation."  *See* Katz, *Ohio Arrest, Search & Seizure*, at Section 29:3.  The trial court correctly concluded that based on the evidence introduced at the suppression hearing, the evidence of methamphetamine manufacture and use had no connection to Deputy Woodgeard's illegal entry and limited search of the house.  In the absence of a causal connection between the constitutional violation and the evidence seized after Clements consented to the subsequent search, we reject Clements's second argument.

## V. CONCLUSION

{¶34}   The trial court correctly concluded that the state met its burden of establishing that Clements voluntarily consented to the search of his residence and denied Clements's motion to suppress evidence obtained from the search.  Having overruled Clements's sole assignment of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
       William H. Harsha, Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**