[Cite as *State v. Hansard*, 2020-Ohio-5528.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

STATE OF OHIO,                              :

    Plaintiff-Appellee,                    : CASE NO. 19CA11

    vs.                                    :

DAVID S. HANSARD,                          : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.                   :

_____

APPEARANCES:

Patrick Clark, Columbus, Ohio for appellant.[1]

Jason Holdren, Gallia County Prosecuting Attorney, Gallipolis, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:   11-25-20
ABELE, J.

{¶ 1} This is an appeal from a Gallia County Common Pleas Court judgment of conviction and sentence.   David Hansard, defendant below and appellant herein, was convicted of one count of possession of cocaine and one count of trafficking in cocaine.   Appellant assigns two errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT ERRED BY DENYING MR. HANSARD'S ORIGINAL AND RENEWED MOTIONS TO SUPPRESS EVIDENCE THAT WAS DISCOVERED FROM A PAT DOWN THAT EXCEEDED THE SCOPE OF A VALID *TERRY* FRISK.

_____
[1] Different counsel represented appellant during the trial court proceedings.

FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION. *TERRY V. OHIO*, 392 U.S. 1, 88 S.CT. 1868, 20 L.ED.2D 880 (1968); SUPPRESSION HR'G T.P. 61-88; TRIAL T. P. 205-209."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY FINDING TROOPER KUEHNE'S RACIALLY DISPARATE PATTERN OF ARRESTING PEOPLE OF COLOR IRRELEVANT TO CREDIBILITY DETERMINATIONS AT THE SUPPRESSION HEARING. CRIM.R. 12(F); *STATE V. GRAY*, 306 KAN. 1298, 403 P.3D 1220 (20170; *STATE V. FANNING*, 1 OHIO ST.3D 19, 437 N.E.2D 583 (1982); OCTOBER 31, 2019 JUDGMENT ENTRY."

{¶ 2} In August 2019, a Gallia County Grand Jury returned an indictment that charged appellant with one count of possession of cocaine in violation of R.C. 2925.11(A) and one count of trafficking in cocaine in violation of R.C. 2925.03(A)(2), both first-degree felonies. Subsequently, appellant filed a motion to suppress evidence.

{¶ 3} At the suppression hearing, Ohio State Highway Patrol Trooper Drew Kuehne testified that on July 23, 2019, he watched eastbound traffic on U.S. Route 35 from his marked cruiser. Soon after dark, he observed a dark gray minivan that appeared to be speeding. As the van approached, Kuehne noticed it cross the right fog line by one tire width, and the driver "cover[ed] the left side of his face so I couldn't see the side of his face." When Kuehne started to pursue the van, the driver "hit his turn signal and exited the highway" to the rest area. The trooper followed the van into the rest area parking lot and observed appellant standing and smoking near his vehicle. Kuehne then returned to the highway and parked approximately one mile down the road and watched traffic.

{¶ 4} Shortly thereafter, Trooper Kuehne again observed appellant's van, and, as the trooper pulled out, the van again crossed the fog line. Kuehne ran appellant's registration, observed him

slow to 61 miles per hour in a 70 mile per hour zone, and initiated a traffic stop. Appellant advised Kuehne that he had rented the van, although he could not locate the rental agreement. Kuehne observed that appellant was "extremely nervous, * * * his hands were shaking, his voice trembled. I noticed that he was breathing heavily and he was starting to sweat on his forehead."

{¶ 5} Trooper Kuehne testified that, after he explained to appellant the traffic violations and asked about his destination, appellant told him he was traveling from Columbus, Ohio to Charleston, West Virginia to visit family. When Kuehne asked if appellant had "ever been in any kind of trouble before," appellant mentioned a prior robbery, "and he eventually * * * got around to saying he had been in trouble for drugs before," specifically cocaine. Kuehne also explained that drugs often come from Columbus to Charleston on U.S. Route 35 and that he had concern that appellant may have had drugs in the van. Kuehne testified, however, that appellant told him that he did not have anything illegal in his van and that Kuehne was welcome to search the vehicle.

{¶ 6} At that point, Trooper Kuehne asked appellant to exit the vehicle and as he watched appellant walk toward the cruiser, Kuehne stated, "I was watching the * * * back of [appellant's] pants and I noticed that he appeared to be squeezing his legs together and he was walking a little bit uncomfortable, like almost a wobble." When they reached the front of the cruiser, Kuehne asked for, and received, appellant's consent to a pat-down frisk. "I explained to him when I got to the lower half of his body that during a pat down I typically have to check between a male's legs * * *, so I wanted him to know that and not be uncomfortable for it." Kuehne explained that between a male's legs is a place "that suspects typically hide weapons. In the waistband uh, the groin area, the back of the pants, the waistband there in the back of the pants." Kuehne also testified that, in his mind, buttocks are no different from arm pits when it comes to weapons concealment.

{¶ 7} Trooper Kuehne also recalled appellant's size as a "larger man," approximately 300 pounds.  "[D]uring that part of the pat down I went up between his legs in the rear of his pants and I immediately felt what I believed to be a bag of contraband between his butt cheeks."  When asked what he did after he felt the object, Kuehne stated:

> [R]ight then I handcuffed him and um, he started to kind of turn away from me so I made sure I got his arms, I handcuffed him.  He kept turning towards me and asked what was going on, what was going on?  And uh, at that point, I advised him of Miranda rights.  Um, he uh, he nodded that he understood his rights and then he asked me again what's going on?  And I said, you've got dope in your butt.  So um, Trooper Atwood I believe was in route to the scene at that time.  I think he arrived on scene right as I had gotten Mr. Hansard handcuffed.  Um, he kept turning away from me and he, it felt to me like he was trying to get his hands to the rear of his pants so he could remove it himself um, which I was concerned that he might try to destroy it or tamper with it.

{¶ 8} Trooper Kuehne continued, "I kind of just turned him to the side and I used my hand on the outside of his pants and just manipulated the bag over to the side of his leg and then eventually pulled to where it had fallen out of his pants onto the ground."  Kuehne stated that he did not place his fingers between appellant's buttocks nor come into contact with any body cavity, but held the drugs through appellant's pants and pulled it to the side, and then "I pulled basically his pants and I'm guessing what were his underwear just outward so the bag would drop down out of his pants."

{¶ 9} When the bag fell to the ground, appellant looked down and said, "it just a little bit of coke um, to which [Trooper Kuehne] took to mean cocaine."  Kuehne testified that, after the drugs fell from appellant's pant leg, appellant still appeared to have an odd stance, and Kuehne was "concerned that he might have more contraband," so he started to repeat the same process to search "the outside of his pants."  Kuehne recalled that appellant then started to pull his pants down, but Kuehne told him to "pull his pants back up and then that was the end of the search."  The

prosecution also played the cruiser camera video of the traffic stop.

{¶ 10} On cross-examination, Trooper Kuehne estimated that he had made approximately 200 arrests during his career, and also acknowledged that probably over half of his felony arrests were people of color. Kuehne testified that law enforcement seizes large amounts of drugs along U.S. Route 35, a major artery used to transport drugs from Columbus, Ohio to West Virginia.

{¶ 11} Ohio State Highway Patrol Trooper Matthew Atwood also testified that he observed Trooper Kuehne conduct appellant's pat-down search in front of Kuehne's cruiser. Atwood testified that Kuehne did not put his hands into appellant's pants and, although appellant pulled his pants down after Kuehne retrieved the contraband, Kuehne pulled them back up. After hearing the evidence adduced at the suppression hearing, the trial court overruled appellant's motion to suppress.

{¶ 12} At appellant's bench trial, Ohio State Highway Patrol Crime Lab Chemist Cualli Hernandez testified that the plastic bag retrieved from appellant's pants contained cocaine. Trooper Kuehne and appellant also testified. Appellant stated that Kuehne patted him down before the pat-down on the video and he alleged that Kuehne put "his hands between my buttocks" and "grabbed my penis." Appellant also claimed that Kuehne "broke [the] skin between my buttocks." Kuehne's testimony, however, varied substantially from appellant's account.

{¶ 13} At the conclusion of the bench trial, the trial court found appellant guilty of both charges and ordered him to serve a ten-year prison term, plus 928 days for a post-release control violation. This appeal followed.

I.

{¶ 14} In his first assignment of error, appellant asserts that the trial court erred by denying his motions to suppress the evidence discovered during his pat-down search. Appellant argues that

the officer's pat-down exceeded the scope of a valid *Terry* frisk.

{¶ 15} Generally, appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Hawkins,* 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 16, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress evidence, a trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. Thus, a reviewing court must defer to a trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. *Id.*; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982); *State v. Debrossard,* 4th Dist. Ross No. 13CA3395, 2015-Ohio-1054, ¶ 9. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the case's facts. *See Roberts* at ¶ 100; *Burnside*, *supra,* at ¶ 8.

{¶ 16} The Fourth Amendment to the United States Constitution and Article I, Section Fourteen of the Ohio Constitution protect individuals from unreasonable searches and seizures. *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. The exclusionary rule protects this constitutional guarantee and mandates the exclusion of evidence obtained from an unreasonable search and seizure. *Id.*

{¶ 17} The case sub judice involves an investigatory stop that must be supported by reasonable, articulable suspicion that the driver has, is, or is about to commit a crime, including a minor traffic violation. *See State v. Petty,* 2019-Ohio-4241, 134 N.E.3d 222, ¶ 12 (4th Dist.); *State v. Shrewsbury,* 4th Dist. Ross No. 13CA3402, 2014-Ohio-716, ¶ 15, citing *United States v. Williams,* 6th Cir. No. 12-5844, 2013 WL 18311773 (May 2, 2013). Thus, Trooper Kuehne's observation of

the traffic violations justified the initial investigatory stop.  *See, e.g., State v. Brown*, 4th Dist. Ross

No. 18CA3644, 2019-Ohio-1112, ¶ 15; *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894

N.E.2d 1204, syllabus ("A traffic stop is constitutionally valid when a law-enforcement officer

witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further

evidence of erratic or unsafe driving.")   Further, appellant voluntarily agreed to his vehicle's search,

and the officer had the authority to order appellant to exit the vehicle after the stop.  *See State v.*

*Fowler*, 4th Dist. Ross No. 17CA3599, 2018-Ohio-241, ¶ 17, quoting *State v. Alexander-Lindsey*,

2016-Ohio-3033, 65 N.E.3d 129, ¶ 14 (4th Dist.)("'Officers may order a driver and a passenger to

exit a vehicle, even absent any additional suspicion of a criminal violation'").   Therefore, although

we recognize that appellant does not contest the propriety of the initial investigatory stop or the

officer's direction for him to exit the vehicle, the evidence reveals that the officer acted properly.

*Brown, supra,* at ¶ 16.

{¶ 18} We now address appellant's *Terry* pat-down search.  In *Terry v. Ohio,* 392 U.S. 1,

29-30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court of the United States held that a

police officer may conduct a limited search for weapons in order to protect the officer and others

within the immediate vicinity.

> [W]here a police officer observes unusual conduct which leads him reasonably to
> conclude in light of his experience that criminal activity may be afoot and that the
> persons with whom he is dealing may be armed and presently dangerous, where in the
> course of investigating this behavior he identifies himself as a policeman and makes
> reasonable inquiries, and where nothing in the initial stages of the encounter serves to
> dispel his reasonable fear for his own or others' safety, he is entitled for the protection
> of himself and others in the area to conduct a carefully limited search of the outer
> clothing of such persons in an attempt to discover weapons which might be used to
> assault him.

Therefore, "[w]here a police officer, during an investigatory stop, has a reasonable suspicion that an

individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph two of the syllabus; *Brown*, *supra,* at ¶ 18.

{¶ 19} In the case sub judice, appellant had been temporarily detained during a traffic stop, exited his vehicle at Trooper Kuehne's request, and consented to a vehicle search.  Kuehne also twice asked appellant for permission to pat him down for weapons, and appellant consented.  "One of the well-delineated exceptions to the general prohibition against a warrantless search occurs when the person consents to the search."  *State v. Nolen,* 4th Dist. Scioto No. 19CA3873, 2020-Ohio-118, ¶ 30, quoting *State v. Bloomfield*, 4th Dist. Lawrence No. 14CA3, 2015-Ohio-1082, ¶ 29.  "'No Fourth Amendment violation occurs when an individual voluntarily consents to a search.'"  *State v. Clements*, 4th Dist. Hocking No. 15CA19, 2016-Ohio-3201, ¶ 20, quoting *State v. Carothers*, 2015-Ohio-4569, 47 N.E.3d 483, ¶ 25 (5th Dist.), citing *United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002).  Additionally, "the right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed."  *State v. Hansard,* 4th Dist. Scioto No. 07CA3177, 2008-Ohio-3349, ¶ 26, citing *State v. Williams*, 51 Ohio St.3d 58, 554 N.E.2d 108 (1990) and *United States v. Ceballos* (E.D.N.Y.1989), 719 F.Supp. 119, 126 ("The nature of narcotics trafficking today reasonably warrants the conclusion that a suspected drug dealer may be armed and dangerous.").

{¶ 20} Although in the instant case appellant consented to a pat-down search, he argues that Trooper Kuehne exceeded the permissible scope of a pat-down search.  *Terry* permits an officer "to conduct a carefully limited search of the outer clothing" of an individual "in an attempt to discover weapons which might be used to assault him."  *Terry*, 392 U.S. at 30, 88 S.Ct. 1868, 20 L.Ed.2d

889. "'The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue [the officer's] investigation without fear of violence * * *.'" *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), quoting *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Therefore, a *Terry* search must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry* at 29, 88 S.Ct. 1858, 20 L.Ed.2d 889. "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Dickerson* at 373.

{¶ 21} When Trooper Kuehne conducted appellant's pat-down search, he discovered a suspicious object in the rear of appellant's pants. "Although *Terry* limits the scope of the search to weapons, the discovery of other contraband during a *Terry* search will not necessarily preclude its admissibility." *Hansard, supra,* at ¶ 30. The United States Supreme Court adopted the plain-feel doctrine in *Minnesota v. Dickerson, supra,* where the court held, "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Dickerson* at 375-376. "If the illegal nature of the suspicious object is not immediately apparent, police are not permitted to continue touching, feeling, or manipulating the object to identify its nature." *Id.*

{¶ 22} This court has previously approved the plain-feel doctrine's application in a case with a similar fact pattern. In *State v. Hansard, supra,* a police officer stopped a vehicle, removed the

defendant, patted him down for safety reasons, and, during the pat-down, felt a "large, rocky crunchy substance" approximately the size of a tennis ball on the inside of Hansard's thigh. The officer raised Hansard's shirt and discovered what appeared to be a white sock, tied to his belt loop, that contained crack cocaine. *Hansard* at ¶ 6-9. Hansard moved to suppress the evidence and argued the officer lacked probable cause to remove the object and to arrest him. The court determined, however, that the nature of that object as contraband was immediately apparent. "In the context of the plain feel exception to the warrant requirement, 'immediately apparent' is a term of art - it simply means the officer has probable cause to associate the object with criminal activity." *Id.* at ¶ 31. Moreover, whether the nature of the item is "immediately apparent" is a question of fact for the trial court, which is in a much better position than this Court to gauge police credibility." *State v. Kennedy*, 4th Dist. Ross No. 99CA2472, 1999 WL 786322 (Sept.30, 1999), citing *State v. Brandon,* 119 Ohio App.3d 594, 596, 695 N.E.2d 1195 (9th Dist.1997); *State v. Woods*, 113 Ohio App.3d 240, 244, 680 N.E.2d 729 (2d Dist.1996); *Hansard* at ¶ 32.

{¶ 23} This court also considered a similar case in *State v. Brown*, 4th Dist. Ross No. 18CA3644, 2019-Ohio-1112. In *Brown*, a police officer stopped a vehicle, recognized the defendant as a person involved in drug activity, and observed a K-9's positive alert for drugs in the vehicle. The officer also noticed the defendant's nervous manner and asked him to exit the vehicle for a weapons pat-down. During the pat-down, the officer felt an "abnormality - a large bulge between Brown's legs - that, through his drug-interdiction experience, he immediately knew was contraband, although he did not know the particular type of contraband." *Id.* at ¶ 7. Although during a weapons pat-down search an officer cannot squeeze or manipulate an object to determine whether it is contraband, this court concluded that, once the officer felt and immediately recognized

the contraband, he could seize the object.   *Brown* at ¶ 23; *State v. Milhouse*, 133 Ohio App.3d 527, 530, 728 N.E.2d 1123 (1st Dist.1999) ("If, during the course of a *Terry* pat-down search of a subject's clothing for weapons, 'a police officer feels an object whose contour or mass makes its incriminating character as contraband immediately apparent, and the officer has a lawful right of access to the object, the officer is entitled to seize the object' under the plain-feel doctrine"); *see also Dickerson*, *supra,* 508 U.S. at 375.

{¶ 24} In *State v. Williams,* 4th Dist. Ross No. 10CA3162, 2011-Ohio-763, an officer conducted a vehicle stop and, after a positive drug alert, removed the defendant from his vehicle. When the officer patted down the defendant, he "felt the presence of a small, round object between Williams' buttocks."   *Id.* at ¶ 3.   This court concluded that, under the circumstances, it became immediately apparent that the object discovered during the pat-down was contraband and, under the plain-feel doctrine, probable cause existed for the search.   Thus, the trial court overruled the motion to suppress.   Similarly, in the instant case the contraband became "immediately apparent" to Trooper Kuehne.

{¶ 25} Appellant cites *State v. Allen*, 2d Dist. Montgomery No. 22663, 2009-Ohio-1280, in support of his argument that Trooper Kuehne exceeded his authority in conducting the *Terry* pat-down search.   In *Allen,* officers responded to a dispatch about a rape at an apartment.   After the officers arrived, they discovered Allen inside the apartment and ordered him to the ground.   Instead of complying, Allen lifted his hands and asked, in a confrontational manner, "What the f**k's going on?"   The officers then put Allen on the floor, placed his hands behind his back, and secured him with handcuffs.   One officer testified that he became concerned that Allen might be armed due to the violent nature of rape.   *Id.* at ¶ 4-10.   Also, during the officer's pat-down search for weapons, he

"felt a large wad of cash on the outside of Allen's pockets and a rock of crack cocaine protruding from Allen's buttocks. [The officer] put on a rubber glove and retrieved the crack cocaine from Allen." *Id.* at ¶ 10. The Second District highlighted the officer's testimony that he patted down the exterior of Allen's clothing and "denied searching between the cheeks of Allen's buttocks." *Id.* at ¶ 31. The court did note its concern over the intrusiveness of a search of the area between an individual's buttocks, but eventually concluded that the officer's search did not rise to that level of intrusiveness and, thus, did not exceed the permissible scope of a *Terry* pat-down search. *Id.* at 45. Here, we also do not believe that Trooper Kuehne's pat-down search exceeded the permissible scope of a *Terry* pat-down search.

{¶ 26} In the case sub judice, Trooper Kuehne stopped appellant for a traffic violation and observed him as "extremely nervous, * * * his hands were shaking, his voice trembled, * * * he was breathing heavily and he started to sweat." When asked if he had ever been in trouble, appellant said he had "been in trouble for drugs before," including "prison time * * * for cocaine." Appellant also stated that he was traveling from Columbus, Ohio, to Charleston, West Virginia, which, Kuehne testified, is a known drug trafficking artery. After Kuehne asked appellant if he had drugs in his van, appellant consented to a vehicle search. When appellant exited his vehicle, Kuehne testified that appellant squeezed his legs together and wobbled as he walked. As the trial court observed, appellant also consented to a pat-down search. When Kuehne performed a pat-down between appellant's legs and felt a bag of contraband positioned near appellant's buttocks, Kuehne handcuffed appellant and advised him of his *Miranda* rights. From outside appellant's clothing, Kuehne moved the object in appellant's pants and the contraband fell to the ground. The trial court noted that Kuehne testified that "his fingers did not go between Defendant's butt cheeks and that he

never put his hands inside the Defendant's pants while conducting the pat down search. Further, the Trooper testified that, upon inspection, the package did not have any feces, blood or any bodily material on it." Thus, the court determined that (1) appellant consented to the pat-down search, (2) the plain-feel exception to the warrant requirement applied, and (3) the subsequent contraband seizure did not violate appellant's Fourth Amendment rights.

{¶ 27} Accordingly, based upon all of the foregoing reasons, we agree with the trial court's determination. We thus conclude that competent, credible evidence supports the trial court's findings and the trial court correctly applied the substantive law to facts. Thus, we overrule appellant's first assignment of error.

II.

{¶ 28} In his second assignment of error, appellant asserts that the trial court erred by finding Trooper Kuehne's alleged racially disparate pattern of arresting people of color irrelevant to credibility determinations at the suppression hearing. In the case at bar, the trial court noted in its entry that appellant "asked some questions during suppression that attempted to establish an argument that race played a factor in Defendant's stop and subsequent search." The court, however, cited *State v. Dukes*, 4th Dist. Scioto Nos. 16CA3745, 16CA3760, 2017-Ohio-7204, in which an officer stopped the defendant for a traffic violation, and ultimately discovered drugs in the rented vehicle's door panel. As in the present case, Dukes argued that the traffic stop was racially motivated. *Id.* at ¶ 12. This court observed that "A police officer may stop the driver of a vehicle after observing a de minimis violation of traffic laws." *Dukes* at ¶ 16, citing *Debrossard*, 4th Dist. Ross. No. 13CA3395, 2015–Ohio–1054, ¶ 13; citing *State v. Guseman*, 4th Dist. Athens No. 08CA15, 2009–Ohio–952, ¶ 20; citing *State v. Bowie*, 4th Dist. Washington No. 01CA34,

2002–Ohio–3553, ¶ 8, 12, and 16; citing *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)(subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis). We further observed in *Dukes* that the Supreme Court of Ohio has stated: "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop[.]" *Dukes* at ¶ 16, citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 655 N.E.2d 1091 (1996), syllabus. *See also State v. Johnson,* 10th Dist. No. 16AP-689, 2017-Ohio-5527, ¶ 25.

{¶ 29} Courts have also generally rejected racial profiling as a basis for evidence suppression when the evidence supports the reasonableness of the investigatory stop. *Dukes* at ¶ 17, citing *State v. Coleman*, 3rd Dist. Hancock No. 5–13–15, 2014–Ohio–1483, ¶ 18 (rejecting argument that officer stopped defendant because of his race and rejecting racial profiling as legal basis for evidence suppression); citing *State v. Chambers*, 3rd Dist. Hancock No. 5–10–29, 2011–Ohio–1305, ¶ 22 (even if officer initiated traffic stop based upon defendant's race, the fact does not affect the reasonableness of the stop for Fourth Amendment purposes); *see also United States v. Cousin*, 448 Fed.Appx. 593, 594 (6th Cir.2012) (explaining that *United States v. Nichols*, 512 F.3d 789, 794–795 (6th Cir. 2008) precludes the application of the exclusionary rule for alleged racial profiling.); *City of Cleveland v. Oko*, 2016–Ohio–7774, 73 N.E.3d 1122, ¶ 20 (8th Dist.)( "[a]ll challenges to the validity of a traffic stop are subject to the same Terry standard of review, even where the defendant raises allegations of pretext."); *State v. Gartrell*, 2014–Ohio–5203, 24 N.E.3d 680, ¶ 68 (3rd Dist.)("[a]ny ulterior motives for the traffic stop are irrelevant to the determination of whether the officers possessed a reasonable, articulable suspicion justifying the stop."). Thus, in *Dukes* this

court concluded that, in light of the fact that a de minimis traffic violation provides a proper justification for a traffic stop, the stop was not unreasonable under the Fourth Amendment, even if the officer could have had some ulterior motive for the stop. *Id.* at 19.

{¶ 30} In the case sub judice, the trial court determined that appellant's race was not a factor because proper justification existed for the investigatory stop. Moreover, appellant did not challenge the propriety of the initial stop. Additionally, even if this court were to assume, for purposes of argument, that Trooper Kuehne considered appellant's race when he initiated the traffic stop, that fact does not affect the reasonableness of the stop for Fourth Amendment purposes. *Dayton v. Erikson, supra,* syllabus. However, to be sure, this court will, as should all courts, condemn any law enforcement officer's stop or action based solely upon a suspect's race or ethnic heritage. Obviously, the United States Constitution does not permit such action. However, we again point out that in the case sub judice, Trooper Kuehne had sufficient justification for appellant's stop and subsequent search and did not violate the requirements of the Fourth Amendment. Thus, we conclude that the trial court did not err in refusing to consider race as a factor in deciding appellant's motion to suppress.

{¶ 31} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.